## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**NIKITA S. PRESCOTT-HARRIS**
**9633 Parson Massey Place**
**Lorton, VA  22079-2356**
**Plaintiff,**


**v.**                                            **CIVIL ACTION NO.: _____**


**JOHN M. MCHUGH, SECRETARY,**
**U.S. DEPARTMENT OF THE ARMY**

**SERVE: John M. McHugh, Secretary**
**Dept. of the Army**
**101 Army Pentagon**
**Washington, D.C.  20310-0101**

**SERVE: Loretta Lynch, U.S.**
**Attorney General, Dept. of Justice**
**10th & Pennsylvania Ave., N.W.**
**Washington, D.C.  20530**

**SERVE:  Channing D. Phillips**
**U.S. Attorney for the District of Columbia**
**555-4th Street, N.W.**
**Washington, D.C.  20530**

**And**

**ASHTON B. CARTER, SECRETARY,**
**U.S. DEPARTMENT OF THE DEFENSE**

**SERVE: Ashton B. Carter, Secretary**
**Dept. of the Defense**
**1000 Defense Pentagon**
**Washington, D.C.  20301-1000**

**SERVE: Loretta Lynch, U.S.**
**Attorney General, Dept. of Justice**
**10th & Pennsylvania Ave., N.W.**
**Washington, D.C.  20530**

**SERVE: Channing D. Phillips**
**U.S. Attorney for the District of Columbia**
**555-4th Street, N.W.**
**Washington, D.C. 20530**

**Defendants.**

## COMPLAINT

**COMES NOW** the Plaintiff, Nikita Prescott-Harris ("Plaintiff," "Complainant" or " Ms. Harris"), by counsel, and for her Complaint against John McHugh, Secretary, U.S. Department of the Army (the "Army") and Ashton B. Carter, Secretary, U.S. Department of the Defense (the "DOD") (collectively the "Defendants"), states:

## JURISDICTION AND VENUE

1. This Action is brought under the Rehabilitation Act of 1973, as amended, 29 U.S.C. 791, *et seq*., for unlawful disability discrimination and employment practices perpetrated against Plaintiff including, but not limited to, disparate treatment of and the failure to reasonably accommodate Plaintiff.

2. Additionally, Plaintiff alleges that she is a victim of retaliation and reprisal for having asserted her rights, privileges and immunities under the Rehabilitation and Title VII of the Civil Rights Acts, such retaliation being forbidden by 29 U.S.C. Section 791, *et seq*. and 42 U.S.C. Section 2000e-3, respectively, and other controlling Federal statutes, laws and regulations.

3. Therefore, this case asserts Federal Question jurisdiction in that this claim constitutes a case or controversy arising under the Constitution and the laws of the United States and original jurisdiction exists pursuant to 28 U.S.C. Section 1331.

4. Venue is proper here in the District of Columbia pursuant to 28 U.S.C. 1391(e)(1)(B).

5. On January 21, 2009, Plaintiff  was employed by, and last reported to work in late March 2011 at, the Walter Reed Army Medical Center ("WRAMC"), Department of Hematology/Oncology Clinic, 6900 Georgia Avenue, N.W., Washington, D.C. 20307-5001, as a civilian Nurse (Case Manager), YH-0610-02, GS-12, Step 4.  Plaintiff's official duty station was Washington, District of Columbia.

6. At all times relevant to this action, WRAMC was a medical center or subordinate entity under the auspices, control and direction of Defendant Army.

7. As a direct and proximate result of the unlawful acts and/or omissions of Defendants occurring at her duty station at the WRAMC in the District of Columbia, Plaintiff sustained severe permanent physical injury, including, but not limited to, exacerbation of her fibromyalgia condition and mental injuries.

8. In January 2011, Plaintiff made contract with and subsequently filed her informal complaint of discrimination at WRMAC in the District of Columbia, which is where the EEO counseling occurred.

9. In February 2011, Plaintiff's Formal Complaint of Discrimination was filed at WRMAC in Washington, D.C.

10. In March 2012, the Army directed Plaintiff to file her request for the appointment of, and hearing before, an EEOC Administrative Judge in the EEOC, Washington Field Office,

131 M Street, N.E., WDC 20507; and, Plaintiff duly and timely comported with such instruction.

11. Venue is proper in the District of Columbia as a substantial part of the events or omissions giving rise to this claim occurred in the District of Columbia.

12. Additionally, Defendants and/or their agents and employees may be found transacting business in the District of Columbia.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

13. On January 13, 2011, Plaintiff made initial contact with the EEO office at WRAMC in Washington, D.C., complaining of ongoing discrimination, non-sexual harassment and disparate treatment based upon her race (African American), sex (female), disability (physical) and reprisal based upon participation in EEO activity - perpetrated by her first level white male superior, Maj. David Van Echo, M.D. ("Maj. Van Echo" or "Dr. Van Echo").  The Army assigned Docket No.:ARWAMC11JAN00119 to Plaintiff's case.

14. On February 22, 2011, Plaintiff timely filed her Formal Complaint of Discrimination at WRAMC in the District of Columbia, complaining of ongoing failure to reasonably accommodate, non-sexual harassment, and disparate treatment based upon her race (African American), sex (female), disability (physical) and reprisal based upon participation in EEO activity perpetrated by her first level white male superior, Maj. David Van Echo, M.D.

15. On March 9, 2011, in Washington, D.C., the Army accepted said issues for EEO investigation.

16. On August 16, 2011, the WRAMC sitting in Washington, D.C., acknowledged and accepted Plaintiff's amendment to her Formal Complaint ("Amended Complaint"),

asserting additional claims of discrimination, harassment based upon being given an unfair, below average performance appraisal by Maj. Van Echo as well as the Chief Nurse based upon her race (African American), sex (Female), disability (physical/mental) and reprisal for participation in prior EEO activity. This Amended Complaint was submitted for EEO investigation as a part of the "investigation of the original complaint."

17. Upon receipt of the Report of Investigation dated March 19, 2012 (the "ROI"), Plaintiff timely requested a hearing before an EEOC Administrative Judge pursuant to 29 CFR Section 1614.108(g). As aforestated, the request for appointment of and hearing before an EEOC Administrative Judge, was submitted as directed by Army to the EEOC, WFO, 131 M Street, N.E., WDC.

18. The Office of Chief Administrative Judge of the EEOC, then assigned this matter to Administrative Judge Meeka J. Clay, EEOC, Charlotte, North Carolina for adjudication. Ms. Harris, by counsel, received notice of said assignment in or about February 2013, and the affixing of EEOC Case No. 570-2012-00598X to Plaintiff's original and amended Formal Complaint.

19. After initial discovery, on or about August 8, 2013, Plaintiff was directed by Administrative Judge Clay to file her Motion for Leave to Amend Complaint, adding same or similar claims of discrimination based upon disability and retaliation, including, but not limited to, the Defendants' issuance of a Notice of Proposed Removal for Failure to Maintain a Regular and Predictable Work Schedule, dated June 7, 2013 (the "NPR"). The NPR was issued on DOD letterhead and in, *inter alia*, retaliation, immediately following: (a) Plaintiff's May 21, 2013, deposition of Plaintiff's then immediate supervisor and successor to Dr. Van Echo, Dr. Andreas Lindenberg; (b) the filing of Plaintiff's Position

Statement adding the DOD as a party defendant, etc.; and (c) the filing Plaintiff's May 30, 2013, Expert Witness Designation.

20. Said Motion for Leave further sought to add the DOD as a party defendant based upon Plaintiff's August 14, 2011, "BRAC" related "mass transfer" to the Joint Task Force - CAPMED, Ft. Belvoir Hospital, Ft. Belvoir, VA, n/k/a Defense Health Agency, Ft. Belvoir Hospital.[1]

21. At all times relevant to this action, Ft. Belvoir Hospital or its successor, was under the auspices, control and direction as and of an under-secretariat of the Secretary of the Defense.

22. On or about September 17, 2013, Administrative Judge Clay granted Plaintiff's Motion for Leave to Amend, and the Second Amended Complaint was duly and timely filed on or about September 25, 2013 in EEOC Case No.: 570-2012-00598X.

23. After an incredible delay (and several requests for revived prosecution by Plaintiff), on or about April 27, 2015, Judge Clay, *inter alia*, severed EEOC Case No.: 570-2012-00598X, over Plaintiff's objection, creating EEOC Case No.: 430-2015-00340X for adjudication of claims against the DOD pertaining to the June 7, 2013, NPR.

24. EEOC Case No.: 570-2012-00598X was placed on track for a merits hearing to occur on September 9, 2015, however, on August 17, 2015, Defendant Army, by counsel, moved for continuance of said hearing.

---

[1] From January 21, 2009 until August 14, 2011, Plaintiff was an employee of the Army (specifically, WRAMC). From August 15, 2011 to the present, Plaintiff is an employee of the DOD (specifically, DHA – Ft. Belvoir Community Hospital). However, since on or about April 1, 2011, Plaintiff's compensation and benefits have been paid pursuant to a worker's compensation award determined by the Department of Labor's Office of Worker's Compensation (Federal Employees Compensation Act ("FECA")) due to a disability related occupation disease caused by Defendant Army at WRAMC in D.C., and more particularly discussed herein.

25. On August 18, 2015, Plaintiff filed her Notice of Intent to File Suit in U.S. District Court respecting EEOC Case Nos. 570-2012-00598X and 430-2015-00340X.

26. On or about August 20, 2015, Plaintiff filed her Amended Notice of Intent to File Suit in U.S. District Court respecting EEOC Case Nos. 570-2012-00598X and 430-2015-00340X.

27. Plaintiff has sufficiently exhausted her administrative remedies warranting this Court's exercise of subject matter jurisdiction over this matter in accordance with 29 C.F.R. Section 1614.407.  Specifically, in excess of 1,636 days have elapsed since Plaintiff filed her original Formal Complaint of Discrimination on February 22, 2011, Case No.: ARWRAMC11JAN00119 and "final" action has not been taken.  *See* 29 CFR Section 1614.407. Additionally, *see Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 301-304 (4th Cir. 2009) ("a plaintiff may raise the retaliation claim for the first time in federal court" when "asserting a Title VII claim of retaliation for a previous EEOC charge").

## PARTIES

28. Plaintiff Harris is an African-American female under the age of 40 years.  She commenced her federal service with Defendant Army on or about January 21, 2009, duty station Washington, D.C., WRAMC.  She was duly qualified as a Registered Nurse ("RN"), assigned to the Oncology/Hematology Medical Unit as a Nurse Case Manager, GS-12, Step 2. (ROI, 435, see SF-50).

29. During the time period of January 21, 2009 - March, 2011, Plaintiff's immediate supervisor was Maj. David C. Van Echo, M.D., a white male over the age of 40 years. During the time period of April - May, 2011, Plaintiff was jointly supervised by Drs. Van Echo and Andreas Lindenberg.  Thereinafter, until the present, upon information and belief, Dr. Lindenberg remains Plaintiff's superior of record.

30. Defendant John McHugh is a white male over age 40 ("McHugh" or "Army"), and is the Secretary of the Army.  Suit is hereby brought against McHugh in his official capacity as the lead federal officer of the Army and a member of the Executive Branch of the U.S. Government.  WRAMC at all times relevant to this action was a subordinate branch, and under the command, direction, control and supervision, of the Army.

31. Defendant Ashton B. Carter is a white male over age 40 ("Carter" or "DOD"), and is the Secretary of the DOD.  Suit is hereby brought against Carter in his official capacity as the lead federal officer of the DOD and a member of the Executive Branch of the U.S. Government.  The Defense Health Agency ("DHA"), created in 2013, is a subordinate entity of the DOD, directed by an Assistant Secretary of the Defense Jonathan Woodson, M.D., who as an under-secretary reports directly to the Secretary of the Defense, Carter.

32. Maj. Van Echo is a physician (board certified hematologist/oncologist) and a senior officer employed by the U.S. Army.  He was the Clinic Chief for the Oncology Department of WRAMC in Washington, D.C., responsible for supervising all enlisted and civilian staff, including Plaintiff.  Dr. Van Echo is not a qualified individual with a disability.  Dr. Van Echo reported to Dr. Gallagher, as all times relevant to this action. At all times relevant to this action, Dr. Van Echo was acting within the scope of his employment.

33. Lieutenant Andreas Lindenberg, M.D., is a white male over the age of 40 years.  Dr. Lindenberg is not a qualified individual with a disability.  He is a physician (board certified hematologist/oncologist) and a senior officer employed by U.S. Army.  In or about April 2011, Dr. Lindenberg became the Clinic Chief for the Oncology Department of WRAMC in Washington, D.C., responsible for supervising all enlisted and civilian staff, including

Plaintiff and remains Plaintiff's record supervisor.  At all times relevant to this action, Dr. Lindenberg was acting within the scope of his employment.

34. Lieutenant Colonel Gallagher is a white male over the age of 40 years. He is a physician and a senior officer employed by the U.S. Army.  Dr. Gallagher is not a qualified individual with a disability. At all times relevant to this action, Dr. Gallagher has served as Plaintiff's second level superior.  At all times relevant to this action, Dr. Gallagher was acting within the scope of his employment.

## FACTS COMMON TO ALL COUNTS

35. The allegations stated in paragraph Nos. 1-34, as re-alleged just as though set forth in detail, verbatim.

36. On or about December 17, 2009, Ms. Harris, by and through her rheumatologist Kathleen Price, M.D., formally notified the Army of Ms. Harris' disabling conditions of severe fibromyalgia and TMJ, and requested, *inter alia*, an ergonomics evaluation of Ms. Harris' workplace as an accommodation for such disability under the Rehabilitation Act. (ROI 138).

37. Ms. Harris was entitled to "reasonable accommodation," and other protections or immunities under the Rehabilitation Act, as amended, because her disability satisfied, *inter alia*, the elements set forth at 29 CFR Section 1630.2(g).

38. Again, on or about December 31, 2009, Ms. Harris, by and through Dr. Price, notified Sharon Ribas, Disability Manager, EEO Office, WRAMC, Washington, D.C., of Ms. Harris' "severe fibromyalgia," and requested reasonable accommodation.  The Army, by and through Maj. Van Echo, M.D. (Ms. Harris' then first level supervisor) and Sharon Ribas (Disability Program Manager), was actually aware of Ms. Harris' disability and her

requests for reasonable accommodation.  This request, in addition to the prior request for a workplace ergonomic evaluation, was to allow Ms. Harris to work from 10:00 a.m. to 6:00 p.m., "rather than earlier in the day."  (ROI 125).

39. In violation of its own policy and procedures for providing reasonable accommodation (ROI 211, 218-233), the Army, by and through Van Echo (and others), intentionally failed to promptly respond to Ms. Harris' request for, *inter alia*, a workplace ergonomic evaluation, or otherwise meaningfully, promptly or properly engage in the "interactive process," forcing Ms. Harris to work in conditions which caused her to experience, *inter alia*, excruciating pain and discomfort and exacerbation of her pre-existing medical conditions.

40. Over three (3) months after Plaintiff's requests, on March 8, 2010, without justification or excuse, a separate Army unit formally (yet belatedly) published the Ergonomic Hazard Report (the "Hazard Report"), finding Ms. Harris' work environment highly deficient, placing her at substantial risk of exacerbated physical and/or mental injury. (ROI, 100-103).

41. Ms. Harris' immediate superiors, including Dr. Van Echo, failed to adopt any proper, or effective plan to ensure compliance, *in toto*, with these critical, time-sensitive injury avoidance and accommodation requirements.  Instead of respecting Ms. Harris' rights under the Rehabilitation Act, as amended, and reasonably accommodating her known disability, Dr. Van Echo – on March 10, 2010, **two (2) days after publication** of the Hazard Report maliciously, discriminatorily and in retaliation issued Ms. Harris a "Written Counseling" alleging meritless time and attendance violations.  (ROI 60).

42. Dr. Van Echo, having declared war on Ms. Harris, forced Ms. Harris to continue to work in an extremely dangerous environment causing her to suffer excruciating physical and mental pain.

43. On April 7, 2010, and other times, the Army and Dr. Van Echo wrongfully, discriminatorily and in retaliation threatened Ms. Harris with adverse action in the nature of a meritless "Notice of Leave Restriction." (ROI 349-350) This Notice of Leave Restriction was issued less **than thirty (30) days after** formal publication of the Hazard Report to which there remained absolute non-compliance by both the Army and Van Echo.

44. Dr. Van Echo's malevolent objective in issuing the meritless "Written Counseling" and Notice of Leave Restriction was to: (a) harass and intimidate Ms. Harris; (b) force her to submit to his authority; and (c) compel her to work in an injurious and intolerable environment both physically and mentally.

45. In fact, as of July 19, 2010, Van Echo and the Army were knowingly non-compliant with the Hazard Report, which mandated that Ms. Harris seek medical attention for mental and physical pain and suffering from the Occupational Health Clinic ("OHC") at Walter Reed Medical Center in Washington, D.C. (ROI 136). OHC further requested that Van Echo and the Agency please "provide" Ms. Harris with, *inter alia*: (1) a telephone headset; (2) an adjustable keyboard; and (3) an ergonomic chair. All such items had been recommended by the Hazard Report, which was being intentionally ignored by the Army, by and through Van Echo. In retaliation, both Van Echo, Lindenberg and other Army officials ignored OHC's request causing Plaintiff to sustain further injury.

46. In or about November 2010, the Army then demanded that Ms. Harris receive a flu shot. On December 3, 2010, Ms. Harris timely provided medical documentation from Dr.

Brian Carty explaining that Ms. Harris was unable to have a flu shot because she "had exacerbation of her chronic pain syndrome and fatigue." Thereafter, Ms. Harris was nevertheless further subjected to meritless, malicious adverse actions.

47. On December 14, 2010, Ms. Harris, by and through Dr. Price, again issued a letter to the Army's EEO Office, Disability Program Manager, WRMAC in Washington, D.C., requesting reasonable accommodation "under the Americans with Disability Act" in the nature of "ergonomic accommodation as previously advised … at the workplace," telecommuting "as much as possible, two to three times a week," and allowing for physical therapy. (ROI 132).

48. Dr. Van Echo had actual knowledge of each such request. Said requests, however, were again ignored, or otherwise unreasonably denied, by Dr. Van Echo and the Army without having ever timely engaged in the interactive process with Ms. Harris, or her physician, Dr. Price.  (ROI 132).

49. Instead of engaging in a dialectic respecting Plaintiff's said requests for reasonable accommodations, two (2) days later - on December 16, 2010 - Dr. Van Echo charged Plaintiff with AWOL for alleged failure to report to duty without leave first being approved. This charge was wholly without merit and was retaliatory.

50. On December 17, 2010, **three (3) days** following Dr. Price's request for reasonable accommodations for Harris, the Army in retaliation wrongfully issued Ms. Harris a meritless, harassing "Counseling Statement" for allegedly failing to provide "evidence" in support of her inability to accept the influenza immunization, even though Ms. Harris had timely tendered due and proper exemption documentation executed by her primary care physician, Brian Carty, M.D. (ROI 137).

51. On January 7, 2011, Dr. Van Echo and the Army served an unreasonable leave restriction memorandum (the "Leave Restriction") (ROI 67-68), which was levied against Ms. Harris, **after** she had submitted myriad requests, including, but not limited to, yet another written request for Reasonable Accommodation made on or about December 29, 2010. (ROI, 111-113).

52. The timing between Plaintiff's December 29, 2010, Request for Reasonable Accommodations and the meritless, retaliatory "Leave Restriction" was just nine (9) days, including the federal holiday.

53. On January 13, 2011, Plaintiff duly submitted yet **another** formal Request for Reasonable Accommodation, including, but not limited to, the following accommodations: (a) periodic rest breaks; (b) telecommute part time, 2-3 hour weekly; (c) work from Ft. Belvoir Community Hospital "ASAP"; (d) flexible work schedule, part-time while working at WRAMC; (e) adjustments to leave policy and procedures to include leave flexibility to take unpaid leave when necessary for medical treatment, etc.; (f) allowing self-paced work load; (g) allowing to work from home; (h) provision of ergonomic work station suited to employee with disability; (i) provide parking in employee parking garage; and (j) eliminate workplace stress.  (ROI, 110).

54. As and for her reason for this aforesaid request, Plaintiff noted her disability - fibromyalgia causing "chronic muscle & joint pain, chronic fatigue, sleep disorder, depression/anxiety, and migraine headaches … concentration issues…." (ROI 110).

55. After aforesaid blatant, repeated retaliatory acts or omissions, Ms. Harris was compelled to contact the EEO on or about January 13, 2011 ("Initial Contact"), alleging discrimination

based upon, *inter alia*, her disability, the failure to reasonably accommodate her disability and retaliation.

56. The Army's pattern and practice of ignoring, shooing and/or cavalierly dismissing Ms. Harris' requests for reasonable accommodation is evidenced by its illegal, untimely response to her formal requests submitted, *e.g.*: (a) December 14, 2010; (b) December 29, 2010; and (c) January 13, 2011 (ROI 110). These formal requests for reasonable accommodation, as well as, all of Ms. Harris' other such requests aforesaid, were all amply supported by the Hazard Report of March 8, 2010, and the written medical opinions of her physicians, including Kathleen Price, M.D. and Brian Carty, M.D. (which had been duly submitted to the Army).

57. After Plaintiff's said repeated demands for reasonable accommodations, she inquired of Dr. Van Echo specifically regarding the status of ergonomic office equipment required by the March 8, 2010, Hazard Report.  On January 20, 2011, Dr. Van Echo replied via email as follows: "This is the latest. There is no money in the budget to purchase furniture of any kind.  SGT Ramos will complete his inventory of clinic equipment over the weekend.  I have instructed him to locate what you need and move it from another office …." (ROI, 393).

58. Dr. Van Echo's "no money in the budget" statement is manifestly discriminatory, false, malicious and retaliatory. "U.S. Army Procedures for Providing Reasonable Accommodation for Individuals with Disabilities," effective March 17, 2009, p. 12, dictate: "In determining whether a proposed reasonable accommodation poses an undue hardship, the overall resources and options available to the Army must be considered, not just the budget or resources of an individual segment, sub-component, or division within the

Army." (ROI, 211, 222).   Therefore, Dr. Van Echo's "budget" argument directly contravenes and abdicates governing Army Procedures, as it strains credulity the United States Army's overall budget was unable to accommodate Plaintiff's ergonomic office safety equipment requirements.  The fact that Dr. Van Echo made this pronouncement over ten (10) months after his knowledge of the Hazard Report establishes his discriminatory and retaliatory animus and desire to physically and mentally destroy Plaintiff as a human being.

59. There can be no doubt that Reasonable Accommodations should have been immediately provided to Ms. Harris by the Army because WRAMC Disability Program Manager L.L. Johnson on or before January 31, 2011 (sitting in Washington, D.C.) again formally admitted that Ms. Harris was a "qualified individual with a disability," as her illness does "substantially limit a major life function and is not temporary," and with proper accommodation she "can perform the necessary functions of her job."  (ROI, 315).

60. Ms. Harris filed her FMLA application on or about January 20, 2011 (ROI, 126-129).

61. On January 20, 2011, Van Echo was interviewed by Cathy Andrews, the EEO Counselor assigned to Ms. Harris' case. According to the Report of the EEO Counselor, Van Echo admitted being "frustrated" due to Ms. Harris' requests for reasonable accommodation. (ROI, 11).   Preposterously, Dr. Van Echo reiterated his "no money in the budget" statement. (ROI, 11).  Dr. Van Echo falsely represented to the EEO Counselor that he "did not know Plaintiff needed ergonomic equipment because her illness." (ROI, 11).  However, the very face of the Hazard Report reflects that Plaintiff, the Occupational Health Clinic ("OHC") and her supervisor Maj. David Van Echo, "requested this survey as a result of chronic headaches and increased pain in her neck, jaw, shoulders, upper and lower back

and hips…. She suffered whiplash and chronic strains in [an automobile] traffic accident that are now exacerbated from her workstation." (ROI, 238).

62. Furthermore, Dr. Van Echo proclaimed before the EEO Counselor that he was "unaware" that under FMLA Ms. Harris had the right to be carried in an "LWOP status without question." (ROI, 11). Dr. Van Echo did admit to the EEO counselor that he had indeed wrongfully inquired of Ms. Harris in 2010 as to whether she was indeed "married" because "a patient had told him that [Ms. Harris] 'is not even married.'" *Id.*

63. On February 22, 2011, Ms. Harris filed her formal complaint of discrimination alleging, *inter alia*, discrimination based upon disability, ongoing failure to reasonably accommodate and/or retaliation (the "Formal Complaint").

64. On February 25, 2011, Dr. Van Echo asked Army EEO Specialist, Cathy Andrews, via email whether Ms. Harris' "EEO Complaint" had "been resolved." (ROI 259-260). Ms. Andrews responded: "No, sir, by no means has this complaint been resolved." (ROI 259).

65. On or about March 22, 2011, some three (3) weeks thereafter, Dr. Van Echo sought legal advice from Army legal counsel as to, *inter alia*, how he or Army could deny Harris' requests for reasonable accommodations and/or otherwise continue his efforts to remove Harris from federal service. (See, ROI 263).

66. On April 1, 2011, Plaintiff was forced to file a Worker's Compensation Claim ("FECA Claim," or "WC Claim") based upon, *inter alia*, a disability related occupational injury. (ROI, 273-276). Specifically, Plaintiff's physical and mental conditions had deteriorated and were further rapaciously deteriorating due to the Army's abject discrimination, retaliation and/or willful refusal to reasonably accommodate her disability.

67. In fact, the Army, by and through its agents and employees including, but not limited to, Van Echo (and others) had knowingly and intentionally refused to even respond substantively to Harris' requests for reasonable accommodation made more than four (4) times, including, but not limited to: (a) via the Hazard Report of March 8, 2010; (b) by Dr. Price on December 14, 2010; (c) December 29, 2010; and (d) January 13, 2011.

68. On April 1, 2011, Dr. Van Echo submitted his Supervisor's form CA-2. (ROI 274), response to Plaintiff's presentation of her FECA claim on even date.

69. The form CA-2 simply reflect that Dr. Van Echo again became incensed and retaliated against Plaintiff. In that vein, Dr. Van Echo maliciously opposed Ms. Harris' claim for benefits certifying under notice of "felony criminal prosecution," as follows: "Employee did not stop work as a result of this illness [exacerbation of fibromyalgia, etc.].  Agency received reasonable accommodation request on 1/24/11.  Ergonomic devices have been ordered ….." (ROI, 274, 276).  This overall record thus reveals Dr. Van Echo's penchant for misrepresenting the facts respecting, and his discriminatory, retaliatory animus towards, Plaintiff because of her disabling conditions.

70. On April 6, 2011, Dr. Price ordered Ms. Harris immediately out of work and placed on total disability because of the Army's repeated and wrongful refusals to reasonably accommodate Ms. Harris causing "exacerbation" of Ms. Harris' fibromyalgia and myofascial pain conditions.  (ROI, 400).  Harris' primary care physician, Dr. Carty, later issued his concurrence with Dr. Price's orders, and he so advised the Army.

71. Instead of then timely accommodating Ms. Harris in a manner relevant to her *in extremis* circumstances, the Army by and through Drs. Van Echo and (newly assigned) Lindenberg intensified their concerted, vicious and holistic attack upon Ms. Harris and her credibility

attempting to destroy Ms. Harris physically and emotionally and oust her from Federal Service.

72. For instance, on April 11, 2011, Dr. Lindenberg demanded that Ms. Harris report to work, forthwith, or suffer disciplinary action.  (ROI, 359).  At that time, however, the Army and Dr. Lindenberg had actual knowledge of: (a) Ms. Harris' diagnoses and total disability determination by two (2) attending physicians, Drs. Price and Carty; (b) the Army's unreasonable non-compliance with the Hazard Report published over 13 months earlier; (c) the Army's obvious violations of its own procedures by, *inter alia*, being non-responsive to Dr. Price's December 14, 2010, request for reasonable accommodations for Ms. Harris; (d) the Army's blatant violations of its own procedures by, *inter alia*, being non-responsive to Ms. Harris' December 29, 2010 and January 13, 2011 formal requests for reasonable accommodation; (e) the pendency of Ms. Harris' FECA Claim; (f) Ms. Harris' entitlement to leave under either the FMLA, or LWOP; (g) Harris' pending Formal EEO Complaint.

73. On April 27, 2011, the Army and Van Echo belatedly responded to Ms. Harris' said requests for reasonable accommodations rejecting the same materially, in whole cloth. Albeit Ms. Harris did not directly receive this correspondence (which was allegedly sent to her home via U.S. Mail, only) from the Army, such denials were baseless, wrongful, discriminatory, retaliatory, untimely and simply at war with Executive Order 13164, relevant Agency policy, the spirit of the Rehabilitation Act, and the objective evidence in this record.

74. On June 2, 2011, Dr. Lindenberg and the Army received a medical note Dr. Price, stating that Harris remained unable to work, under physicians' care respecting specific illnesses, and prescribing physical therapy.

75. On June 3, 2011, **the very next day**, Dr. Lindenberg in retaliation retroactively charged Ms. Harris with "AWOL", "effective May 22, 2011."  Note, further on April 13, 2011 and on April 20, 2011, the Army and Dr. Lindenberg had actually received written notification from Ms. Harris requesting that she be placed on "LWOP status" during the pendency of her FECA claim.  Dr. Lindenberg willfully disregarded Ms. Harris' lawful and reasonable requests for disability accommodation.

76. On June 10, 2011, the Army and Dr. Lindenberg acknowledged receipt of an email from Ms. Harris requesting continued LWOP status while and during the pendency of her FECA claim.  Harris further indicated that she was infirmed, disabled, in treatment and unable to work in any respect.

77. In further support thereof, on June 21, 2011, Ms. Harris submitted to Dr. Lindenberg a Disability Note issued by Dr. K. Price continuing Ms. Harris on total disability.  Dr. Lindenberg and the Army acknowledged receipt of this Disability Note.

78. Nevertheless, in abject retaliation, on June 28, 2011, **some seven (7) calendar days later**, Dr. Lindenberg issued a **second** "AWOL" disciplinary Memorandum, this time escalating the matter by threatening, *inter alia*, Ms. Harris' "removal" from Federal Service, if Ms. Harris failed to immediately report to work.

79. The bullying and workplace warfare enhanced.

80. On July 12, 2011, Brian Carty, M.D., issued a total disability Note respecting Ms. Harris, which was timely delivered to and received by Dr. Lindenberg.

81. On August 3, 2011, some three (3) weeks later, in reply, Dr. Lindenberg maliciously and without justification or excuse issued Ms. Harris a Notice of Proposed (Five Day) Suspension.

82. On August 14, 2011, Harris was transferred, *in absentia*, along with her entire work unit, including Drs. Lindenberg and Gallagher to the Ft. Belvoir Community Hospital, under the auspices, direction and control the DHA (a subordinate office within the DOD), who continued to implement their scheme to decimate and further harm disabled Ms. Harris.

83. On August 16, 2011, the Army acknowledged Harris' amendment of her Formal Complaint to include disability discrimination, ongoing failure to reasonably accommodate and retaliation claims relevant to, *inter alia*, an intentionally inaccurate performance for FY 2010.  WRAMC - EEO Director, Emma J. Ruffin sitting in Washington, D.C., represented that the amendment would be investigated with the original Formal Complaint and forwarded to the DOD for this purpose.

84. The Army's EEO Director, however, failed to expressly add the DOD as a party defendant agency.  The only information given to Plaintiff regarding the proper party defendant was via letter dated March 9, 2011, issued by Ruffin, ROI 43-46.[2]  Therein, Ruffin indicates the proper party defendant as "John M. McHugh, Secretary of the Army." ROI, 45.

85. On September 7, 2011, Ms. Harris caused a total medical disability note issued by Dr. Carty on said date to be immediately delivered to Dr. Lindenberg.

86. On October 12, 2011, Ms. Harris caused a total medical disability note issued Dr. Price on said date to be immediately delivered to Dr. Lindenberg.

---

[2] Note, this letter is incorrectly dated March 9, 2010 by Ruffin.

87.  Those *bona fide* medical documents were received by Dr. Lindenberg, however, they simply meant nothing to Dr. Lindenberg, and the other Agency retaliators/discriminators, as they blatantly ignored this medical evidence of Plaintiff's severely disabling conditions.

88. On November 2, 2011, Ms. Harris' FECA Claim was accepted and granted, finding Ms. Harris totally disabled and unable to return to work, because she suffers from an "occupational disease," namely: the exacerbation of, *inter alia*, pre-existing fibromyalgia. This occupational injury, as a matter of law, arose out of and during the course of the Ms. Harris' employment and the resultant retaliatory, or discriminatory, work environment contemptuously created by Drs. Van Echo and Lindenberg and their cohorts, known and unknown.

89. On November 14, 2011, i.e., within less than ten (10) days of being notified of the FECA benefits awarded to Ms. Harris, Drs. Lindenberg and Gallagher caused the Army and/or DOD to issue Ms. Harris a meritless Five (5) Day Suspension for "unavailability for duty and failure to follow leave procedures."

90. In deposition on May 21, 2013, Dr. Lindenberg testified that he promptly "expunged" the AWOL timecards and submissions from Plaintiff's personnel file, after he learned of Plaintiff's FECA award.  Deposition Transcript, p. 176-180 (EEOC Case No.:570-2012-00598X).  However, Dr. Lindenberg admitted he did not "expunge" the Notice of Proposed Five Day Suspension from Plaintiff's personnel files, which pivoted upon the [now allegedly expunged] AWOL reports.  Dr. Lindenburg admitted that "to the "best of his knowledge" the Five Day Suspension - based upon the [now expunged] AWOL timecards - "ha[d] not" been expunged and thus apparently remains without merit in Harris' eOPM file. *Id.*

91. The DOD and/or Army, by and through its agents and employees, namely: Drs. Lindenberg and Gallagher, Cynthia Davis, Chief Case Manager, and others, continued to engaged in other acts or omissions sounding in discrimination and/or retaliation against Ms. Harris.

92. On or about August 6, 2012, Dr. Lindenberg issued Plaintiff a "Return to Duty and Notice of Excessive Absenteeism and Employment Options" ("Return to Duty").  In that Return to Duty, Lindenberg threatened to remove Plaintiff from Federal Service, even though this Return to Duty and threat of removal were illegitimate, unlawful and harassing.  The "Return to Duty" flies in the face of settled law, reasonable accommodation and Dr. Lindenberg's claim that he placed Plaintiff in "LWOP" status, following his November 2011 discovery of Plaintiff's FECA award.

93. On September 24, 2012, Plaintiff, by counsel, duly responded to the Return to Duty, again reminding Lindenberg and DOD that Plaintiff remained disabled, under the jurisdiction of the OWCP, under physicians' care and in receipt of full FECA benefits for total, permanent disability.

94. As stated, on May 21, 2013, Lindenberg's deposition was taken in Harris' EEOC Case No.: EEOC Case No.: 570-2012-00598X.  Lindenberg was visibly annoyed and indignant as a result of being orally examined about the particulars of Harris' EEO case.

95. In retaliation, on June 7, 2013 (two (2) weeks following the Lindenberg's deposition), the DOD -- at the direction of Drs. Lindenberg and Gallagher, Davis and other retaliators/discriminators -- issued Harris a Notice of Proposed Removal for "Failure to Maintain a Regular and Predictable Work Schedule."

96. Plaintiff by and through her undersigned Counsel timely lodged a persuasive written Response on July 11, 2013.  The Notice of Proposed Removal was meritless and issued

solely for the purpose of further discriminating, harassing or retaliating against Ms. Harris. For instance, as of the penning of this Complaint over two (2) years later, the Defendant DOD or Army have not adjudicated any removal of Plaintiff - thus establishing that the Notice of Proposed Removal was illegitimate, illegal and unwarranted.

97. As of the penning of this pleading, Harris remain a *bona fide* FECA beneficiary with all benefits, privileges and immunities.

98. Ms. Harris is permanently and totally disabled as a result of the oppressive and unlawful actions and omissions of Defendants Army and/or DOD, by and through their respective or joint agents or employees.

99. Federal law dictates: "the Federal Government shall be a model employer of individuals with disabilities.  Agencies shall give full consideration to the hiring, placement, and advancement of qualified individuals with disabilities." 29 C.F.R. 1614.203(a).

100.    Based upon the foregoing allegations, and others, Plaintiff is demanding the maximum amount of compensatory damages permitted by law. Plaintiff has suffered permanent physical and mental injury as a direct and proximate result of Defendants' actions or omissions, aforestated. Plaintiff has suffered the loss of enjoyment of life, embarrassment, humiliation, pain, suffering, physical injury, mental injury, exacerbation of pre-existing injuries and other compensable injuries. Plaintiff has incurred significant expenses for medical treatments, therapy, medical procedures and medicines.

101.    Plaintiff is entitled to back pay, front pay and corresponding benefits, which are not subject to any statutory limit or legal cap.  Plaintiff is entitled to other equitable relief, including the right to be restored to the *status quo ante bellum*, or otherwise made whole.

102.      Plaintiff is entitled to an award of her attorney's fees and expenses, which are not subject to any statutory limit or legal cap.

103.      Defendant Army employs over 500,000 persons.

104.      Defendant DOD employs over 500,000 persons.

## COUNT I (DISABILITY DISCRIMINATION – DEFENDANT ARMY)

105.      Plaintiff hereby restates the facts alleged in paragraph nos. 1-104 by reference.

106.      Plaintiff is a qualified individual with a disability, as she has a physical impairment that substantially limits one or more major life activities.

107.      Defendant Army provided reasonably safe work environment and working conditions for person with non-disabling conditions.  However, Defendant unlawfully implemented disparate treatment upon Plaintiff because of her disability by offering Plaintiff an unsafe, offensive and unreasonable working environment.

108.      Defendant has taken adverse employment actions against disabled Plaintiff, including, but not limited to: failing to provide Plaintiff with a safe, proper and reasonable environment and conditions in which to work; failing to reasonably accommodate Plaintiff; wrongfully placing Plaintiff on "Leave Restriction"; wrongfully imposing a Five Day Suspension upon Plaintiff; and, engaging in other adverse actions and omissions, as alleged herein, or appearing in the ROI.

109.      Defendant took the aforestated actions against Plaintiff because of her disability.

110.      Defendant does not maintain any legitimate non-discriminatory basis for taking any adverse employment action against Plaintiff.

## COUNT II (FAILURE TO REASONABLY ACCOMMODATE DISABILITY – DEFENDANT ARMY)

111.      Plaintiff hereby restates the facts alleged in paragraph nos. 1-110 by reference.

112.     Plaintiff is a qualified individual with a disability, as she has a physical impairment that substantially limits one or more major life activities.

113.     Plaintiff satisfies the requisite knowledge, skill, experience, education and other job-related requirements of her position.

114.     Plaintiff repeatedly requested reasonable and feasible accommodations which would have allowed her to reasonably perform the essential functions of her position. However, Defendant Army violated Plaintiff's lawful entitlement to reasonable accommodations as follows by: (a) refusing to timely, or otherwise, comport with the requirements of the March 8, 2010 Hazard Report; (b) wrongfully issuing Plaintiff a "Written Counseling" on March 10, 2010; (c) wrongfully issuing Plaintiff a "Notice of Leave Restriction" on April 7, 2010; (d) refusing to immediately implement the demands of the OHC for reasonable accommodations dated July 19, 2010; (e) disregarding and ignoring Dr. Price's December 14, 2010, request for particular reasonable accommodations, namely "ergonomic accommodations" at the workplace, "telecommuting," and time off for physical therapy; (f) repeatedly refusing to fully and adequately engage in the interactive process; (g)  wrongfully charging Plaintiff with AWOL on December 16, 2010; (h) wrongfully issuing Plaintiff a "Counseling Statement" regarding a "flu shot" on December 17, 2010; (i) shooing, ignoring and then  maliciously denying Plaintiff's formal Request for Reasonable Accommodation dated December 29, 2010; (j) wrongfully issuing Plaintiff a "Leave Restriction" on January 7, 2011; (k) wrongfully and untimely denying Plaintiff's formal Request for Reasonable Accommodations dated January 13, 2011; (l) demanding Plaintiff to report to work on April 11, 2011, after receiving notice of Dr. Price's orders directing Plaintiff out of work

dated April 6, 2011; (m) denying on April 27, 2011, Plaintiff's multiple requests for reasonable accommodations; (n) wrongfully charging Plaintiff with AWOL on June 3, 2011; (o) wrongfully charging Plaintiff with AWOL on June 28, 2011; (p) wrongfully noticing and threatening Plaintiff on August 3, 2011, with a Notice of Proposed (Five Day) Suspension; (q) wrongfully imposing on November 14, 2011, Five Day Suspension (after Plaintiff was awarded FECA benefits and according to Dr. Lindenberg Plaintiff's "AWOLs" were allegedly "expunged" from Plaintiff's eOPM file); and (r) other wrongful actions and/or omissions (alleged herein or appearing in the ROI) perpetrated by said Defendant or its agents and employees in denial of Plaintiff's entitlement to reasonable accommodations.

115.     Plaintiff's requests for accommodation were sufficiently direct and specific to put Defendant on notice as to the nature and extent of her disability.

116.     Defendant does not maintain any legitimate non-discriminatory basis for denying Plaintiff's numerous requests for reasonable accommodations.

117.     Defendant Army unlawfully failed to provide Plaintiff with reasonable accommodations.

118.     Defendant Army would not sustain any undue hardship in accommodating Plaintiff as reasonably requested.

## COUNT III (RETALIATION – DEFENDANT ARMY)

119.     Plaintiff hereby restates the facts alleged in paragraph nos. 1-118 by reference.

120.     Plaintiff engaged in myriad lawful activities in the proper and reasonable assertion of her Civil Rights, which constitutes "protected activity," under controlling EEO laws, rules and regulations.

121.     As a direct result of Plaintiff's engagement or participation in EEO protected activity, or acting in opposition to the Agency's discriminatory conduct, the Agency subjected Plaintiff to the following unlawful adverse employment actions and/or omissions: (a) refusing to timely, or otherwise, comport with the requirements of the March 8, 2010 Hazard Report; (b) wrongfully issuing Plaintiff a "Written Counseling" on March 10, 2010, alleging time and attendance violations; (c) wrongfully issuing Plaintiff a "Notice of Leave Restriction" on April 7, 2010; (d) refusing to immediately implement the demands of the OHC for reasonable accommodations dated July 19, 2010; (e) disregarding and ignoring Dr. Price's December 14, 2010, request for particular reasonable accommodations, namely "ergonomic accommodations" at the workplace, "telecommuting," and time off for physical therapy; (f) repeatedly refusing to fully engage in the interactive process; (g)  wrongfully charging Plaintiff with AWOL on December 16, 2010; (h) wrongfully issuing Plaintiff a "Counseling Statement" regarding a "flu shot" on December 17, 2010; (i) shooing, ignoring and then  maliciously denying Plaintiff's Request for Reasonable Accommodation dated December 29, 2010; (j) wrongfully issuing Plaintiff a "Leave Restriction" on January 7, 2011; (k) wrongfully and untimely denying Plaintiff's formal Request for Reasonable Accommodations dated January 13, 2011; (l) Dr. Van Echo's presentation of several false and misleading statements to the EEO Counselor; (m) Dr. Van Echo's presentation of several false and misleading statement in the CA-2 Supervisor's Report to the OWC; (n) demanding Plaintiff to report to work on April 11, 2011, after receiving notice of Dr. Price's orders directing Plaintiff out of work dated April 6, 2011; (o) belatedly and wrongfully denying on April 27, 2011, Plaintiff's prior multiple requests for reasonable accommodations; (p) wrongfully charging Plaintiff with AWOL on

June 3, 2011; (q) wrongfully charging Plaintiff with AWOL on June 28, 2011; (r) wrongfully noticing Plaintiff on August 3, 2011, with a Notice of Proposed (Five Day) Suspension; (s) wrongfully imposing on November 14, 2011, Five Day Suspension, after Plaintiff was awarded FECA benefits and according to Dr. Lindenberg Plaintiff's "AWOLs" were allegedly "expunged" from Plaintiff's eOPM file;  (t) harassingly issuing Plaintiff a Notice to Return to Work dated August 6, 2012; (u) threatening Plaintiff by issuing a meritless Notice of Proposed Removal on June 7, 2013; and (v) other retaliatory actions and omissions alleged herein (or appearing in the ROI) and perpetrated by said Defendant or its agents and employees against Plaintiff.

122.     Such adverse employment actions and/or omissions are materially adverse because individually or collectively they would dissuade a reasonable worker from making a complaint of discrimination, or otherwise engaging in protected EEO activity.

123.     A significant and substantial causal relationship existed between the adverse employment actions or omissions aforementioned, and Plaintiff's protected EEO activity because the materially adverse employment actions/omissions all occurred on the heels of Plaintiff's protected EEO activity as alleged, or within close temporal proximity thereof.

124.     Defendant Army does not maintain any legitimate non-discriminatory basis for its aforementioned actions and/or omissions.

125.     Defendant Army unlawfully retaliated against Plaintiff as alleged, causing Plaintiff great and significant permanent injuries and damages.

**PRAYERS FOR RELIEF AGAINST ARMY COUNTS I-III**

WHEREFORE, for the foregoing reasons, Plaintiff Nikita S. Prescott-Harris, respectfully requests that this Court enter judgment in her favor and against John McHugh, Secretary, U.S. Dept. of the Army, as follows:

(a) That declaratory judgment be entered finding that said Defendant's acts or omissions in the employment of Plaintiff constitute unlawful and prohibited personnel practices, and that said Defendant be enjoined from engaging in such unlawful acts, omissions and practices;

(b) That an order be issued for back pay with prejudgment interest and all the benefits to which Plaintiff is entitled, including interest thereon to the time of judgment satisfaction, with the actual amount to be proven at trial;

(c) That front pay and benefits be ordered to the maximum extent allowed under the law, and as particularly proven at trial;

(d) That front pay and benefits be ordered to the maximum extent allowed under the law, and as more particularly proven at trial;

(e) That  Plaintiff ordered to be compensated for her loss of enjoyment of life, physical and mental pain, physical and mental suffering, permanent physical and mental injury, embarrassment and humiliation in the sum of not less than $3,000,000.00, or to the maximum extent allowed by law, plus all interest (prejudgment and post-judgment) permitted by law for her non-economic injuries;

(f) That an order be entered reimbursing Plaintiff for medical, surgical, nursing, medicines/prescriptions, therapy and related expenses and costs of treatment and procedures incurred in the past and present and expected to be incurred in the future;

(g) That Plaintiff be awarded her reasonable attorney's fees to the maximum extent permitted by law, including costs and expenses;

(h) That Plaintiff be awarded such other legal and equitable relied as may be just and proper by law.

### COUNT IV (RETALIATION – DEPARTMENT OF DEFENSE)

126.     Plaintiff hereby restates the facts alleged in paragraph nos. 1-125 by reference.

127.     Plaintiff engaged in myriad lawful activities in the proper and reasonable assertion of her Civil Rights, which constitutes "protected activity," under controlling EEO laws, rules and regulations.

128.     Nevertheless, Defendant DOD imposed and continued to impose the following retaliatory adverse employment actions upon Plaintiff, including, but not limited to: (a) wrongfully imposing on November 14, 2011, a Five Day Suspension (after Plaintiff was awarded FECA benefits and according to Dr. Lindenberg Plaintiff's "AWOLs" were allegedly "expunged" from Plaintiff's eOPM file); (b) harassingly issuing Plaintiff a Notice to Return to Work dated August 6, 2012; (c) threatening to remove Plaintiff from Federal Service by issuing her meritless Notice of Proposed Removal on June 7, 2013; and (d) other retaliatory actions and omissions alleged herein and/or perpetrated by Defendant DOD or its agents and employees against Plaintiff.

129.     Said adverse employment actions or omissions of Defendant DOD are materially adverse because individually or collectively they would dissuade a reasonable worker from making a complaint of discrimination, or otherwise engaging in protected EEO activity.

130.     A significant and substantial causal relationship existed between the adverse employment actions or omissions aforementioned, and Plaintiff's protected EEO activity as the materially adverse employment actions or omissions all occurred on the heels of Plaintiff's protected EEO activity as alleged, or within close temporal proximity thereof.

131.     Defendant DOD does not maintain any legitimate non-discriminatory basis for its actions and/or omissions aforementioned.

132.     Defendant DOD unlawfully retaliated against Plaintiff as alleged, directly and/or proximately causing Plaintiff great and significant permanent injuries and damages.

**PRAYERS FOR RELIEF AGAINST DEPARTMENT OF DEFENSE – COUNT IV**

WHEREFORE, for the foregoing reasons, Plaintiff Nikita S. Prescott-Harris, respectfully requests that this Court enter judgment in her favor and against Ashton B. Carter, Secretary, U.S. Department of the Defense, as follows:

(a) That declaratory judgment be entered finding that said Defendant's acts or omissions in the employment of Plaintiff constitute unlawful and prohibited personnel practices, and that said Defendant be enjoined from engaging in such unlawful acts, omissions and practices;

(b) That an order be issued for back pay with prejudgment interest and all the benefits to which Plaintiff is entitled, including interest thereon to the time of judgement satisfaction, with the actual amount of such relief to be proven at trial;

(c) That front pay and benefits be ordered to the maximum extent allowed under the law, and as more particularly proven at trial;

(d) That  Plaintiff ordered to be compensated for her loss of enjoyment of life, physical and mental pain, physical and mental suffering, permanent physical and mental injury, embarrassment and humiliation in the sum of not less than $3,000,000.00, or to the maximum extent allowed by law, plus all interest (prejudgment and post-judgment) permitted by law for her non-economic injuries;

(e) That an order be entered reimbursing Plaintiff for medical, surgical, nursing, medicines/prescriptions, therapy and related expenses and costs of treatment and procedures incurred in the past and present and expected to be incurred in the future;

(f) That Plaintiff be awarded her reasonable attorney's fees to the maximum extent permitted by law, including costs and expenses;

(g) That Plaintiff be awarded such other legal and equitable relied as may be just and proper by law.

<u>**A JURY IS HEREBY DEMANDED**</u>.

**NIKITA S. PRESCOTT-HARRIS**
**By Counsel**

**BAKER SIMMONS**
**Attorneys at Law**
2120 L Street, NW, Suite 305
Washington, DC 20037
Telephone: 202.775.0050
Email:richardcbaker@aol.com

By: _____*/S/ RICHARD CARNELL BAKER*_____
    Richard Carnell Baker (VA and DC Bar No. 451190)
    Amana Thompson Simmons (VA and MD Bars)
    Counsel for Plaintiff, Nikita S. Prescott-Harris

<u>**Dated: October 19, 2015**</u>