**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| NIKITA S. PRESCOTT-HARRIS, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 15-1716 (RC) |
| | : | | |
| v. | : | Re Document No.: | 22 |
| | : | | |
| ERIC K. FANNING,[1] *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

**<u>MEMORANDUM OPINION</u>**

**GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**

## I.  INTRODUCTION

Defendants' Motion to Dismiss pushes Plaintiff's Rehabilitation Act Complaint through a gauntlet of 12(b) hurdles, leaving a much leaner cause of action on the other side.  Defendants first ask the Court to dismiss Plaintiff's claims based on events occurring after she filed her administrative complaint, because without exhaustion of individual claims of discrimination the Court lacks subject-matter jurisdiction.  They then argue that Plaintiff's claims are preempted by the Federal Employees' Compensation Act, at least insofar as they seek recovery for workplace injuries.  Defendants further contend that the Rehabilitation Act's venue provisions preclude the Court from evaluating claims of discrimination for actions that took place in Virginia.  Finally, they argue that Plaintiff has not shown that she suffered "adverse employment actions" for any of her claims.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), the Court takes judicial notice that Eric K. Fanning is now Secretary of the Army, and recaptions the case accordingly.

Defendants are correct that the Court lacks jurisdiction over unexhausted claims, and that the Rehabilitation Act requires a different venue for claims that have no apparent connection to the District of Columbia.  They are also correct that Plaintiff cannot double-recover for her workplace injuries, but their specific contention is more appropriately addressed at a later stage of the proceeding involving damages.  And, although they get ahead of themselves when they argue that Plaintiff needed to show adverse employment actions for her failure-to-accommodate claims, they are correct that she has not adequately stated discrimination or retaliation claims.  Accordingly, the Court grants the Motion in part and denies it in part.

## II.  FACTUAL BACKGROUND

### A.  Ms. Harris's Medical Conditions and Work Environment

Nikita Prescott-Harris brought this action under the Rehabilitation Act, alleging that Defendants Eric Fanning and Ashton Carter unlawfully discriminated against her, retaliated against her, and failed to reasonably accommodate her disabilities.  Compl. ¶ 2.[2]  Ms. Harris, a registered nurse, began working for the Army in January 2009 as a Nurse Case Manager.  *Id.* ¶ 28.  Her immediate supervisor was Dr. David Van Echo.  *Id.* ¶ 29.  In December of that year, Ms. Harris's personal rheumatologist formally notified the Army that Ms. Harris had the

---

[2] For purposes of this Motion, the Court accepts the material facts contained within the Complaint as true.  *See Nat'l Treasury Empls. Union v. United States*, 101 F.3d 1423, 1430 (D.C. Cir. 1996).  However, the Court need not accept the legal conclusions that Plaintiff asserts based on those facts.  *Id.*

disabling conditions of fibromyalgia[3] and TMJ[4] and requested an ergonomics evaluation of her workplace as an accommodation under the Rehabilitation Act.  *See id.* ¶ 36.  About two weeks later on December 31, 2009, Ms. Harris's doctor notified the Equal Employment Opportunity ("EEO") Manager at Walter Reed National Military Center ("WRAMC") of Ms. Harris's conditions and requested reasonable accommodation, which in addition to an ergonomics evaluation included a request for Ms. Harris to work from 10:00 a.m. to 6:00 p.m.  *Id.* ¶ 38.  Then, "the Army, . . . through [Dr.] Van Echo . . . , intentionally failed to promptly respond to Ms. Harris'[s] request[s]."  *Id.* ¶ 39.  Three months later, a separate Army unit formally published an Ergonomic Hazard Report, finding that Ms. Harris's work environment was ergonomically deficient and placed her at "substantial risk" of exacerbated injury.  *Id.*  ¶ 40.  Two days later, instead of pursuing a plan to comply with the Hazard Report, Dr. Van Echo issued Ms. Harris a "Written Counseling" on the basis of attendance violations, which Ms. Harris contends was meritless and retaliatory.  *See id.* ¶ 41.  A month later in April 2010, still not in compliance with the Hazard Report, Dr. Van Echo issued Ms. Harris a "Notice of Leave Restriction," which Plaintiff contends was also meritless and retaliatory.  *See id.* ¶¶ 43–44.  In July, the Occupational Health Clinic at WRAMC requested for Dr. Van Echo to provide Ms.

---

[3] Fibromyalgia is a "chronic disorder characterized by widespread pain, diffuse tenderness, and a number of other symptoms. . . . [F]ibromyalgia can cause significant pain and fatigue, and it can interfere with a person's ability to carry on daily activities. . . . [L]ike arthritis, fibromyalgia is considered a rheumatic condition, a medical condition that impairs the joints and/or soft tissues and causes chronic pain."  *See* Fibromyalgia, NIH Publication No. 14-5326, National Institute of Arthritis and Musculoskeletal and Skin Diseases (July 2014), http://www.niams.nih.gov/health_info/fibromyalgia.

[4] "Temporomandibular joint and muscle disorders, commonly called 'TMJ,' are a group of conditions that cause pain and dysfunction in the jaw joint and the muscles that control jaw movement."  TMJ Disorders, NIH Publication No. 13-5487, National Institute of Dental and Craniofacial Research (August 2013), http://www.nidcr.nih.gov/oralhealth/Topics/TMJ/TMJDisorders.htm.

Harris with certain accommodations recommended in the Hazard Report, but Dr. Van Echo and other Army officials ignored the request. *Id.* ¶ 45.

In early December 2010—about a year after Plaintiff's initial EEO accommodation request to the Army—Ms. Harris's doctor again requested reasonable accommodation "under the Americans with Disabilities Act" in the form of her previous requests, telecommuting, and allowing for physical therapy. *Id.* ¶ 47. Dr. Van Echo knew about these requests, but instead of working with Ms. Harris, he charged her with AWOL two days later for allegedly failing to report for duty, then the next day issued another "Counseling Statement" for allegedly failing to provide evidence for her claim that she could not receive a flu shot. *Id.* ¶¶ 48–50. Ms. Harris had provided medical documentation earlier in the month. *See id.* ¶ 46. Later, nine days after Ms. Harris submitted yet another request for reasonable accommodation at the end of December 2010, Dr. Van Echo and the Army served an unreasonable Leave Restriction memorandum against Ms. Harris. *See id.* ¶ 51. A week later, Ms. Harris submitted another formal request for reasonable accommodation, adding several specific requests. *See id.* ¶ 53. The same day, she contacted EEO alleging discrimination based on her disability, the Army's failure to reasonably accommodate her, and retaliation. *Id.* ¶ 55. Then, on January 20, 2011—a week after Ms. Harris's final request—Dr. Van Echo e-mailed Ms. Harris stating that "[t]here [was] no money in the budget to purchase furniture of any kind," which Plaintiff alleges was false and directly at odds with the Army's governing procedures. *See id.* ¶¶ 58–59. The EEO Counselor assigned to Ms. Harris's case interviewed Dr. Van Echo that day, when he stated that he was frustrated by Ms. Harris's requests for reasonable accommodation and claimed that he did not know Ms. Harris needed ergonomic equipment. *See id.* ¶ 61. In late March 2011, Ms. Harris reported for work at WRAMC for the last time. *See id.* ¶ 5.

Around April 2011, Ms. Harris's medical conditions worsened. *See id.* ¶ 66. She filed a worker's compensation claim under the Federal Employees' Compensation Act ("FECA") on April 1, then on April 6 her doctor "ordered [her] immediately out of work and placed on total disability because of the Army's repeated and wrongful refusals to reasonably accommodate," based on a finding of total disability by two attending physicians. *See id.* ¶¶ 66, 70, 72. On April 11, another Army supervisor, Dr. Lindenberg—with full knowledge of the total disability finding—ordered Ms. Harris back to work. *Id.* ¶ 72. At the end of April, the Army and Dr. Van Echo rejected Ms. Harris's accommodation requests. *Id.* ¶ 73. Then, in early June, Dr. Lindenberg and the Army received a medical note from Ms. Harris's doctor stating that Ms. Harris was unable to work and was under physicians' care. *See id.* ¶ 74. The next day, Dr. Lindenberg retroactively charged Ms. Harris with AWOL, despite her earlier requests to be placed on leave-without-pay status. *See id.* ¶ 75. On June 21, Ms. Harris submitted another doctor's note continuing Ms. Harris on total disability. *See id.* ¶ 77. A week later, Dr. Lindenberg issued another AWOL charge, this time threatening Ms. Harris with termination if she did not immediately report for work. *See id.* ¶ 78. Another doctor, Brian Carty, then issued another total-disability note to Dr. Lindenberg on July 12. *Id.* ¶ 80. Three weeks later, Dr. Lindenberg issued a notice of proposed suspension, which Plaintiff contends was without merit. *See id.* ¶ 81. In August 2011—while she was away from work—Ms. Harris's unit, including Dr. Lindenberg, was transferred to Ft. Belvoir Community Hospital in Virginia. *See id.* ¶ 82.

Ms. Harris's FECA claim was granted in November 2011, on the basis that her conditions were exacerbated by her employment. *Id.* ¶ 88. Two weeks later—while Ms. Harris was still away from work—Dr. Lindenberg "caused the Army and/or DOD to issue Ms. Harris a meritless Five . . . Day Suspension." *Id.* ¶ 89. According to Dr. Lindenberg, that suspension has not been

expunged from Ms. Harris's personnel file. *See id.* ¶ 90.  In June 2013, the Department of

Defense—at the direction of Dr. Lindenberg, among others—issued Ms. Harris a Notice of

Proposed Removal for failure to maintain a regular work schedule.  *Id.* ¶ 95.

### B.  Ms. Harris's Pursuit of Reasonable Accommodation

When Ms. Harris contacted the EEO office in January 2011, she "complain[ed] of

ongoing discrimination, non-sexual harassment[,] and disparate treatment based on her race

(African American), sex (female), disability (physical)[,] and reprisal based upon participation in

EEO activity."  *See* Compl. ¶ 13.  On February 22, 2011, she timely filed a formal complaint.  *Id.*

¶ 14.[5]  Then in March, the Army accepted the complaint for EEO investigation, and later

accepted an amendment to the complaint adding claims that Dr. Van Echo and the chief nurse

gave her a below-average performance appraisal.  *See id.* ¶ 16.  In August, "the Army

acknowledged [Ms. Harris's] amendment of her [complaint] to include disability discrimination,

ongoing failure to reasonably accommodate[,] and retaliation . . . [and the] EEO Director . . .

represented that the amendment would be investigated . . . and forwarded to the DOD for this

purpose."  *See id.* ¶ 83.  However, the Army's EEO Director never added the Department of

Defense as a party.  *See id.* ¶ 84.  When she received a Report of Investigation in March 2012,

Plaintiff claims she timely requested a hearing before an EEOC Administrative Judge.  *See id.*

¶ 17.  In August 2013, the Administrative Judge directed Plaintiff to amend her complaint,

adding similar claims based on disability and retaliation, including Defendants' Notice of

Proposed Removal—which was issued on Department of Defense letterhead—and adding the

---

[5] Plaintiff repeatedly references her administrative complaint, yet did not append it to her
Complaint, and it is not a part of the record elsewhere.  Neither party relies on it in their
arguments, nor do they suggest the court should—let alone could—take judicial notice.
Accordingly, the Court analyzes the facts underlying this motion based solely on Plaintiff's
Complaint.

Department of Defense as a defendant.  *See id.* ¶ 19.  In August 2015, Plaintiff filed a Notice of

Intent to File Suit in U.S. District Court.  *See id.* ¶ 25.  The Administrative Judge still has not

taken final action.  *See* id. ¶ 27.

Now Ms. Harris asks the Court for relief from the Army on the bases of disability

discrimination, failure to reasonably accommodate, and retaliation.  Her disability discrimination

claim stems from Defendants' alleged disparate treatment of Plaintiff in the forms of failing to

provide a safe working environment, failing to reasonably accommodate, wrongfully placing

Plaintiff on "Leave Restriction," wrongfully imposing a five-day suspension, and other adverse

actions.  *See id.* ¶¶ 107–08.  She bases her failure to reasonably accommodate claims on multiple

acts, alleging wrongful actions starting in March of 2010 and continuing through November

2011.  *See id.* ¶ 114.  The same is true for her retaliation claims.  *See id.* ¶ 121.  The claims that

she brings that occurred after she filed her formal complaint consist of Defendants: demanding

she return to work on April 11, 2011; denying requests for reasonable accommodation on April

27, 2011; wrongfully charging Plaintiff with AWOL on June 3, 2011; wrongfully noticing and

threatening Plaintiff with a notice of proposed suspension; and, wrongfully imposing a five day

suspension.  *See id.* ¶¶ 114, 121.  Plaintiff asks for a declaratory judgment, back-pay, front-pay,

compensation for loss of enjoyment of life, pain and suffering, permanent physical and mental

injury, embarrassment and humiliation, costs of future medical expenses, and attorney's fees.

*See id.* at 28 ("Prayer for Relief Against Army").

Plaintiff also seeks similar relief from the Department of Defense based on Dr.

Lindenberg's actions.  *See id.* at 31 ("Prayer for Relief Against Department of Defense").  In

particular, she claims retaliation for the November 14, 2011 five-day suspension, issuing a notice

to return to work on August 6, 2012, threatening to fire her via a Notice of Proposed Removal on

June 7, 2013, and "other retaliatory actions and omissions."  *See id.* ¶ 128.

## III. ANALYSIS

### A. Exhaustion

Defendants argue that Ms. Harris failed to exhaust her EEO administrative remedies for

all claims against the Department of Defense and any against the Army occurring after she filed

her EEO complaint in February 2011.  *See* Defs.' Mem. in Supp. Mot. to Dismiss at 12, ECF No.

22.  Defendants specifically argue that Plaintiff never filed an EEO complaint addressing the

alleged discrimination occurring after February 2011, and never filed any complaint against the

Department of Defense.  *See id.*  Plaintiff responds that she alleged "ongoing" discrimination,

then amended her complaint in August 2011 to include a negative performance evaluation and in

August 2013 to include the Notice of Proposed Removal and the Department of Defense as a

defendant.  *See* Pl.'s Mem. in Opp'n to Defs.' Mot. Dismiss at 13–15, ECF No. 24.  She further

argues that the Army EEO Director acknowledged the amended complaint and promised to

forward it to the Department of Defense.  *See id.* at 14.

"Government employees alleging discrimination in violation of Title VII . . . must

exhaust administrative remedies before bringing their claims to federal court."  *Hamilton v.

Geithner*, 666 F.3d 1344, 1349 (D.C. Cir. 2012).  The exhaustion requirements for Title VII

claims and Rehabilitation Act claims are the same.  *See* 29 U.S.C. § 794(a) (applying the

procedures of Title VII to Rehabilitation Act claims).  Because exhaustion is a jurisdictional

requirement under the Rehabilitation Act when a party fails to file an administrative complaint at

all, *see Doak v. Johnson*, 798 F.3d 1096, 1103–04 (D.C. Cir. 2015), *cert. denied*, 2016 WL

5640225 (U.S. Oct. 3, 2016), in such cases, "it is the plaintiff's burden to plead and prove that the Court has jurisdiction," *Welsh v. Hagler*, 83 F. Supp. 3d 212, 217 (D.D.C. 2015).

    If a person believes she has been discriminated against, the Rehabilitation Act requires that she contact an EEO Counselor prior to filing a complaint, so that they can try to resolve the matter informally. *See* 29 C.F.R. § 1614.105(a). If the parties are unable to resolve the issue informally, the aggrieved person may file a formal complaint within 15 days of receiving notice of her right to do so from the EEO counselor. *See* 29 C.F.R. § 1614.105(d). "A complainant may amend a complaint at any time prior to the conclusion of the investigation to include issues or claims like or related to those raised in the complaint." 29 C.F.R. § 1614.106(d). Within 90 days of receiving a final decision or after the formal complaint has been pending for 180 days, the complainant may file a civil action in federal court. 42 U.S.C. § 2000e-16(c). Despite differing approaches among the circuits, *see, e.g.*, *Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 303 (4th Cir. 2009), courts in this district have held that "the Supreme Court's seminal decision in *National Railroad Passenger Corporation v. Morgan*, 536 U.S. 101 (2002), makes clear [that] a Title VII plaintiff is required to exhaust his or her administrative remedies with respect to each discrete allegedly discriminatory or retaliatory act," *see Wada v. Tomlinson*, 517 F. Supp. 2d 148, 183 (D.D.C. 2007), *aff'd*, 296 F. App'x 77 (D.C. Cir. 2008). This means that, under cases in this district, the Supreme Court has "rejected the 'continuing violation' theory that would permit plaintiffs to recover for discrete acts of discrimination and retaliation that were not exhausted but were 'sufficiently related' to exhausted claims." *Payne v. Salazar*, 628 F. Supp. 2d 42, 51 (D.D.C. 2009), *aff'd in relevant part, rev'd in part*, 619 F.3d 56 (D.C. Cir. 2010) (internal quotation marks omitted) (citing *Wada v. Tomlinson*, 517 F. Supp. at 183); *see also Keeley v. Small*, 391 F. Supp. 2d 30, 40 (D.D.C. 2005).

Plaintiff has engaged the EEO process to varying degrees depending on her individual claims; she formally amended her complaint to include some and brings others for the first time here.  Because the law treats each course of action differently, the Court will begin by analyzing claims contained either in Ms. Harris's formal complaint or her amendments before proceeding to the claims brought here for the first time.  Ms. Harris formally amended her administrative complaint to contain claims that Defendants gave her an intentionally inaccurate performance evaluation and issued a Notice of Proposed Removal for failure to maintain a regular work schedule.[6]  *See* Compl. ¶¶ 19–22, 83.  She also added the Department of Defense as a party defendant.  *See id.* ¶¶ 20–22.  Defendants' argument with respect to these claims seems to be that Plaintiff never attempted to resolve these disputes informally.  *See* Defs.' Mem. in Supp. Mot. to Dismiss at 12.  This argument conflicts with the text of the regulations.  Although it is true that, in general, parties must attempt to resolve claims via informal adjudication, the regulations plainly state that "[a] complainant may amend a complaint *at any time* prior to the conclusion of the investigation to include issues or claims like or related to those raised in the complaint."  29 C.F.R. § 1614.106(d) (emphasis added).  Thus, a complainant need not initiate a separate complaint for each subsequent matter related to the ongoing investigation, so long as she properly amends her original claim.  *See Kalinoski v. Gutierrez*, 435 F. Supp. 2d 55, 76–77 (D.D.C. 2006).   Indeed, the administrative judge allowed Ms. Harris to amend her complaint, notwithstanding the lack of an informal conference about those specific claims.  *See* Compl.

---

[6] Although Plaintiff tactfully notes the caveat that her amended administrative complaint contained claims "including, but not limited to" the ones she explicitly included in her Complaint, *see* Compl. ¶ 19, because it is Plaintiff's burden to establish subject-matter jurisdiction by showing that she actually pursued administrative remedies, *see Doak v. Johnson*, 798 F.3d 1096, 1103–04 (D.C. Cir. 2015), *cert. denied*, 2016 WL 5640225 (U.S. Oct. 3, 2016), the Court cannot assume that her other claims were in her amended administrative complaint.

¶¶ 22, 83.  So, Plaintiff's claims against either defendant contained in her amended administrative complaint are not barred by the doctrine of exhaustion.

Plaintiff's claims that were not raised in any administrative complaint, however, are barred in light of *Morgan*.  Plaintiff's specific assertion that she complained of "ongoing discrimination" does not change the fact that she was still required to exhaust her administrative remedies with respect to "each discrete allegedly discriminatory or retaliatory act."  *See Wada*, 517 F. Supp. at 183.  Moreover, Plaintiff does not raise, for example, a hostile work environment claim that might by its nature encompass a string of incidents.  *See generally* Compl. Accordingly, with the exception of those specifically added in her amended administrative complaint, Plaintiff's claims for alleged discrimination, retaliation, and failure to accommodate occurring after February, 22, 2011 must be dismissed for failure to exhaust administrative remedies.  Accordingly, the Court will dismiss the portions of Plaintiff's discrimination claim alleging that she received a five-day suspension in Count I.  *See* Compl. ¶ 108.

On the same basis of failure to exhaust, the Court will also dismiss the following claims contained in Count II of the Complaint: Count II(l) (demanding Plaintiff to return to work April 11, 2011); Count II(m) (denying requests for reasonable accommodation on April 27, 2011); Count II(n) (wrongfully charging Plaintiff with AWOL on June 3, 2011); Count II(o) (wrongfully charging Plaintiff with AWOL on June 28, 2011); Count II(q) (wrongfully imposing a five-day suspension on November 14, 2011); and Count II(r), which seeks relief for "other wrongful acts and/or omissions," to the extent they are not specifically alleged to have been raised in Plaintiff's administrative complaint or amendment.

For the same reason, the Court also dismisses Count III(l) (Dr. Van Echo's false statements to an EEO counselor); Count III(n) (demanding Plaintiff to return to work April 11,

2011); Count III(o) (denying requests for reasonable accommodation on April 27, 2011); Count

III(p) (wrongfully charging Plaintiff with AWOL on June 3, 2011); Count III(q) (wrongfully

charging Plaintiff with AWOL on June 28, 2011); Count III(s) (wrongfully imposing a five-day

suspension on November 14, 2011); Count III(t) (using a Notice of Return to Work on August 6,

2012); and Count III(v), which seeks relief for "other retaliatory acts and omissions," to the

extent they are not specifically alleged to have been raised in Plaintiff's administrative complaint

or amendment.   The Court further dismisses all claims against the Department of Defense except

Count IV(c), which alleges retaliation based on the June 7, 2013 Notice of Proposed Removal,

and Count IV(d), which alleges miscellaneous retaliation, to the extent Plaintiff specifically

alleges that she exhausted her administrative remedies concerning particular instances of

retaliation.

### B.  Plaintiff's FECA Benefits

Defendants next argue that to the extent Ms. Harris's claims seek damages for personal

injury, they are preempted by the Federal Employees' Compensation Act.  *See* Defs.' Mem. in

Supp. Mot. to Dismiss at 9–10.  They specifically argue that Ms. Harris's Complaint shows that

she "suffered personal injuries in the workplace" for which she is already receiving FECA

benefits, and that FECA is the exclusive remedy for such injuries.  *See id.*  Plaintiff contends

that, although she is receiving FECA benefits, the receipt of such benefits "does not bar Title VII

or Rehabilitation Act claims."  *See* Pl.'s Mem. in Opp'n to Defs.' Mot. Dismiss at 12–13 (citing

several sources).

FECA "is the federal sector version of workers' compensation."  *Briscoe v. Potter*, 355 F.

Supp. 2d 30, 39 (D.D.C. 2004); *see also United States v. Lorenzetti*, 467 U.S. 167, 169

(1984) ("[T]he United States' liability for work-related injuries under FECA is exclusive . . . .").

"Like State workers' compensation programs, FECA provides the exclusive remedy for claims against the employer—the United States—for workplace injuries and illnesses." *Briscoe*, 355 F. Supp. 2d at 39.  "Where FECA applies, its remedy is exclusive and bars all other claims for compensation against the Government." *DiPippa v. United States*, 687 F.2d 14, 16 (3d Cir. 1982); *accord Briscoe*, 355 F. Supp. 2d at 39.

However, FECA applies to work-related injuries, not claims of discrimination, which are different causes of action aimed at redressing different types of harms.  *See Williams v. Tapella*, 658 F. Supp. 2d 204, 210 (D.D.C. 2009); *DeFord v. Sec'y of Labor*, 700 F.2d 281, 290 (6th Cir. 1983) ("Neither the language of the statute itself nor the policy foundations underlying workmen's compensation acts support a conclusion that intentional discrimination is to be viewed as causing an 'injury' subject to FECA coverage.").  In general, FECA is aimed at tort damages, while the Rehabilitation Act is more equitable in nature.  *See Miller v. Bolger*, 802 F.2d 660, 662–63 (3d Cir. 1986); *Johnson v. Sullivan*, 764 F. Supp. 1053, 1063 (D. Md. 1991) (analyzing Title VII and Rehabilitation Act claims together *vis a vis* FECA).  Thus, remedies under civil rights statutes like the Rehabilitation Act "have generally been viewed as equitable make-whole relief to redress discrimination."  *See Miller*, 802 F.2d at 663.  If FECA precluded discrimination-based claims, a plaintiff would be forced to choose whether to recover for the discrimination or the workplace injury, leaving her partially uncompensated.  *See Morris v. Roche*, 182 F. Supp. 2d 1260, 1277 (M.D. Ga. 2002).  Of course, "a frustrated FECA claimant cannot secure judicial review of a FECA compensation decision by claiming that the Rehabilitation Act entitles her to accommodation . . . when the claim is predicated upon the same illness or injury that gave rise to the [FECA] initial decision." *Meester v. Runyon*, 149 F.3d 855, 857 (8th Cir. 1998), *cert. denied*, *Meester v. Henderson*, 526 U.S. 1144 (1999); *accord Tapella*,

658 F. Supp. 2d at 210–11.  In short, although a plaintiff may not seek compensation for injuries covered by FECA, she may do so under the Rehabilitation Act for discrimination-based damages.

Defendants are correct that, to the extent Plaintiff is seeking damages for workplace injuries and illnesses, FECA precludes her suit.  Plaintiff freely admits that she receives benefits under FECA.  *See* Compl. ¶¶ 20 n.1, 88.  She specifically states that her benefits are based on her "disab[ility] and [inability] to return to work, because she suffers from 'occupational disease,' namely: the exacerbation of, *inter alia*, pre-existing fibromyalgia."  *Id.* ¶ 88.  It is unclear from her complaint how much of the relief she seeks is predicated upon the exacerbation of her conditions.  For example, she seeks $3 million for "loss of enjoyment of life, physical and mental pain, physical and mental suffering, permanent physical and mental injury, embarrassment and humiliation."  Compl. at 29 ("Prayer for Relief Against Army").  Although much of these claims seem to arise from the injuries or illnesses she sustained from working, many could be claims redressable by the Rehabilitation Act; the failure to accommodate for a physical condition could cause "physical and mental suffering," and discrimination could cause "embarrassment and humiliation."  Suffice it to say that no particular claim for relief is clearly completely barred by FECA.  Thus, this issue appears to be one simply of the extent of damages Plaintiff may recover if she establishes that her employer discriminated or retaliated against her, or failed to accommodate her disabilities.  Accordingly, the Court believes this issue is better addressed at a later stage of litigation after the facts have been fleshed out and the theories of recovery refined.  Consequently, the Motion to Dismiss on this basis is denied without prejudice.

## C. Venue

The Court next addresses Defendants' argument that Plaintiff's claims against Defendant Carter are made in an improper venue.  *See* Defs.' Mem. in Supp. Mot. to Dismiss at 13. Defendants specifically argue that "Plaintiff's claim against Defendant Carter is based entirely on events occurring at Fort Belvoir in the Eastern District of Virginia."  *See id.* at 15.  Plaintiff responds that her original duty station was at WRAMC in D.C., where "substantially all of the employment practices at issue occurred."  Pl.'s Mem. in Opp'n to Defs.' Mot. Dismiss at 19–20. She further argues that, because she was physically unable to work, she never even physically reported to duty in Ft. Belvoir; her last day of work was in March 2011 at WRAMC.  *See id.* at 20.

In general, when venue is challenged, the plaintiff bears the burden of establishing that venue is proper.  *See Hunter v. Johanns*, 517 F. Supp. 2d 340, 343 (D.D.C. 2007); *see also Gardner v. Mabus*, 49 F. Supp. 3d 44, 46–47 (D.D.C. 2014) ("Because it is the plaintiff's obligation to institute the action in a permissible forum, the plaintiff usually bears the burden of establishing that venue is proper." (quoting *Freeman v. Fallin*, 254 F. Supp. 2d 52, 56 (D.D.C. 2003)).  Plaintiffs must establish venue with respect to each defendant and each cause of action. *See Al-Beshrawi v. United States*, No. 04-0743, 2005 WL 3274104, at *2 (D.D.C. Aug. 3, 2005) (citing *Lamont v. Haig,* 590 F.2d 1124, 1135 (D.C. Cir. 1978)) ("As a general rule, venue must be established for each cause of action."); *Lamont,* 590 F.2d at 1135 (reasoning that the plaintiff was required to "demonstrate proper venue with respect to each cause of action and each [defendant]" (footnotes omitted)); *see also Stebbins v. Nationwide Mut. Ins. Co.*, 757 F.2d 364, 366 (D.C. Cir. 1985) ("We are also puzzled by the district court's order because it does not address separately why venue is improper as to *each* of the three employment discrimination

claims advanced by [the plaintiff].").  Although courts generally disfavor splitting up a case when venue is proper for some claims but improper for others, *see, e.g.*, *Jyachosky v. Winter*, No. 04-1733, 2006 WL 1805607, at *4 (D.D.C. June 29, 2006), "[s]everance of actions against multiple defendants of different residences in order to transfer claims against parties as to whom venue is improper is permissible and proper procedure" when there is no district with proper venue over all claims, *see Wilson v. Pallman*, No. 09-0787, 2009 WL 2145317, at *3 (E.D. Pa. July 15, 2009) (quoting *McSparran v. Kingston Contracting Co.,* 221 F.Supp. 459, 460 (E.D. Pa. 1963)).

Rehabilitation Act claims are subject to the same venue provisions as Title VII claims. *Dehaemers v. Wynne*, 522 F. Supp. 2d 240, 247 (D.D.C. 2007).  A Rehabilitation Act case "may be brought in one of three judicial districts—where the unlawful employment practice occurred; where the relevant employment records are located; or where the plaintiff would have worked but for the challenged employment practice."[7]  *See James v. England*, 332 F. Supp. 2d 239, 250–51 (D.D.C. 2004), *clarified on denial of reconsideration*, 226 F.R.D. 2 (D.D.C. 2004); *see also* 42 U.S.C. § 2000e-5(f)(3).  Rehabilitation Act "determinations of the locus of disputed employment practices should be examined" "based on a 'commonsense appraisal' of events having operative significance in the case."  *Donnell v. Nat'l Guard Bureau*, 568 F. Supp. 93, 94 (D.D.C. 1983).  In using such an approach, courts often look to where the discriminatory or retaliatory action actually occurred rather than the background actions that may have eventually

---

[7] "Only if the employer is not found within one of those districts, may the action be brought in the judicial district where the employer has its principal office."  *James v. England*, 332 F. Supp. 2d 239, 251 (D.D.C. 2004), *clarified on denial of reconsideration*, 226 F.R.D. 2 (D.D.C. 2004); *see also* 42 U.S.C. § 2000e-5(f)(3).

had an impact on the plaintiff.  *See, e.g.*, *Abraham v. Burwell*, 110 F. Supp. 3d 25, 29 (D.D.C. 2015); *James v. Booz–Allen*, 227 F. Supp. 2d 16, 20 (D.D.C. 2002); *Donnell* 568 F. Supp. at 94.

A commonsense approach to venue requires the Court to sever and transfer Plaintiff's claims against the Defendant Carter.  Based on how she has framed the case in her Complaint, Ms. Harris brings this action against two completely separate employers—the United States Army for Counts I, II, and III, and the Department of Defense for Count IV—for two completely separate sets of actions, seeking two separate forms of relief.  *See id.* ¶¶ 105–132; Prayers for Relief.  Ms. Harris does not allege that she was transferred to Virginia for a discriminatory purpose or as retaliation.  *See id.* ¶ 82.  Nor does she allege any discriminatory action by the Department of Defense prior to her transfer.  *See id.* ¶ 128.  She also does not make a hostile work environment claim that might encompass events occurring both before and after her transfer.  *See generally id.*

The only specific exhausted allegation remaining in her complaint against Defendant Carter is that Dr. Lindenberg issued the June 7, 2013 Notice of Proposed Removal.  *See supra* Part III.A.  The record shows that this Notice was issued well after she and Dr. Lindenberg had been transferred to Ft. Belvoir Community Hospital in Virginia.  *See* Compl. ¶ 82.  It does not matter that Ms. Harris never reported for work due to her physical condition, because the only location "where the unlawful employment practice occurred," *see James*, 332 F. Supp. 2d at 250–51—which is Plaintiff's only apparent basis for her assertion of venue—is located in Virginia.  Nor does it matter that the overall locus of the entire case is in Washington; the only claims that she has made against Defendant Carter occurred entirely in Virginia.  Although Plaintiff vaguely suggests that it brings other claims against Defendant Carter by "restat[ing] facts alleged" in Counts against Defendant Fanning and stating that she is suing based on "other

retaliatory actions and omissions," *see* Compl. ¶¶ 121, 126, because it is the plaintiff's burden to establish venue, the Court will not piece together other allegations in the Complaint to conjure venue.  A plain reading of the Complaint shows that Plaintiff seeks recovery from the Department of Defense only for alleged discriminatory actions that took place in Virginia. Accordingly, the claim against Defendant Carter in Count IV of the Complaint is severed and transferred to the Eastern District of Virginia.

### D.  Failure to State a Claim

With Plaintiff's claims against Defendant Carter transferred due to improper venue, the Court concludes with Defendants' contention that Plaintiff did not state a cognizable claim against Defendant Fanning.  *See* Defs.' Mem. in Supp. Mot. to Dismiss at 11–12.  Defendants argue that Plaintiff's Complaint does not contain adverse employment actions, which are necessary elements of those claims.  *See id.* at 11.  Because the specific law defining what sort of employment action is sufficiently adverse to be actionable differs based on whether the claim is one for discrimination, retaliation, or failure to accommodate, the Court will first analyze Defendants' argument with respect to Plaintiff's discrimination claim before proceeding to the retaliation claim and then the failure to accommodate claim.

### 1.  Adverse Discriminatory Actions

Defendants argue that none of Plaintiff's allegations of discriminatory action constitute adverse employment actions.  *See id.* at 11–12.  They specifically argue that "unconsummated actions" like threatening to discipline Plaintiff do not constitute adverse employment actions, because they did not lead to "materially adverse consequences."  *See id.* at 11.  Plaintiff responds that she was subjected to a pattern of discrimination that included both threats and concrete, consummated actions.  *See* Pl.'s Mem. in Opp'n to Defs.' Mot. Dismiss at 18–19.

Like in Title VII cases, to prove discrimination under the Rehabilitation Act, the plaintiff must prove, among other elements, that "she suffered an adverse employment action." *Bonnette v. Shinseki*, 907 F. Supp. 2d 54, 68–69 (D.D.C. 2012) (quoting *Chappell-Johnson v. Powell*, 440 F.3d 484, 488 (D.C. Cir. 2006) (Title VII case)).  "An adverse employment action is 'a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits.'" *Jones v. Castro*, 168 F. Supp. 3d 169, 174 (D.D.C. 2016) (quoting *Douglas v. Donovan*, 559 F.3d 549, 552 (D.C. Cir. 2009)).  In the specific context of discrimination, adverse employment actions are those involving "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." *Jones*, 168 F. Supp. 3d at 178 (quoting *Douglas*, 559 F.3d at 552).  In contrast, "[f]or employment actions that do not obviously result in a significant change in employment status—such as giving a poor performance evaluation, reassigning office space and equipment . . . an employee must go the further step of demonstrating how the decision nonetheless caused such an objectively tangible harm." *Id.* (quoting *Douglas*, 559 F.3d at 553).  Leave restrictions—if they can be considered adverse actions at all—are not considered adverse if they do not actually cause the plaintiff to forgo leave.  *See Baloch v. Kempthorne*, 550 F.3d 1191, 1198 (D.C. Cir. 2008).

Because Plaintiff's discrimination claims fall squarely into the latter category, they must be dismissed.  The only remaining claims by Plaintiff—in light of the analysis above—are that Defendant "fail[ed] to provide Plaintiff with a safe, proper[,] and reasonable environment and conditions in which to work; fail[ed] to reasonably accommodate Plaintiff; [and] wrongfully plac[ed] Plaintiff on 'Leave Restriction.'"  *See* Compl. ¶ 108.  Plaintiff's only specific

allegation—the imposition of leave restriction—cannot support a claim of discrimination because it is unaccompanied by any allegation that she was actually forced to return to work despite her claim to leave.  Moreover, nowhere in her Complaint does Plaintiff allege that her employment status changed as a result of her supervisors' actions, nor does she contend that her transfer—which was a transfer of her entire unit—was an adverse action.  She also does not claim that she was subjected to a hostile work environment, which might be the culmination of several distinct acts of discrimination.  The vague claims remaining either are more appropriately part of a failure to accommodate claim or do not evince "a significant change in employment status."  Rather, they amount to the types of conceivable discrimination that require a showing of objectively tangible harm.  Accordingly, the Court dismisses the discrimination claims against Defendant Fanning found in Count I.

### 2.  Adverse Retaliatory Actions

Defendants also argue that none of Plaintiff's allegations of retaliation state cognizable claims under the Rehabilitation Act, because they do allege any adverse employment actions. *See* Defs.' Mem. in Supp. Mot. to Dismiss at 11–12.  They do so on the exact same grounds: that the alleged retaliatory actions were mere unconsummated threats and therefore not "sufficiently severe" to constitute adverse employment actions.  *See id.* at 12.  Plaintiffs respond that the context and combination of the alleged retaliatory actions could dissuade a reasonable worker from making a charge of discrimination against her employer.  *See* Pl.'s Mem. in Opp'n to Defs.' Mot. Dismiss at 17–18.

To show an actionable retaliation claim, plaintiffs are required to show that they were subjected to one or more "materially adverse action[s]."  *See Jones*, 168 F. Supp. 3d at 178 (quoting *Bridgeforth v. Jewell*, 721 F.3d 661, 663 (D.C. Cir. 2013)).  A "[m]aterially adverse

action would 'dissuade[] a reasonable worker from making or supporting a charge of discrimination.'" *Bridgeforth*, 721 F.3d at 663 (second alteration in original) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 54 (2006)).  Notably, the denial of a request for accommodation cannot by itself support a claim of retaliation based on the request. *See Floyd v. Lee*, 968 F. Supp. 2d 308, 334 (D.D.C. 2013). "[N]ormally petty slights, minor annoyances, and simple lack of good manners will not create such deterrence." *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 68.  However, context matters, and whether an alleged act constitutes retaliation "will often depend upon the particular circumstances." *Id.* at 69.  And, "the timing of the alleged protected activity and the alleged adverse action is critical." *Jones*, 168 F. Supp. 3d at 180.

Importantly, "[a] long line of cases from this Circuit and others have held that threats, revoked disciplinary plans, and other such ultimately unconsummated actions are not materially adverse for purposes of retaliation claims." *Id.* (alteration in original) (quoting McNair v. D.C., 903 F. Supp. 2d 71, 75–76 (D.D.C. 2012)); *see also Baloch*, 550 F.3d at 1199 (finding that threatened suspensions did not constitute materially adverse retaliatory actions, noting that "courts have been unwilling to find adverse actions where the suspension is not actually served").  In *Baloch*, the D.C. Circuit held that unserved leave restrictions, proposed—but not imposed—suspensions, and job-related letters of counseling did not constitute adverse retaliatory employment actions.  *See* 550 F.3d at 1198–99.

Plaintiff's allegations fall short of making out a plausible claim of retaliation.  Plaintiff alleges that because of her participation in EEO protected activity starting with her original request for accommodation, Defendants: failed to accommodate; wrongfully issued a "Written Counseling" alleging attendance violations; wrongfully issued a "Notice of Leave Restriction"

and "Leave Restriction;" charged Plaintiff with AWOL; and issued a "Counseling Statement" for allegedly failing to provide evidence for her claim that she could not receive a flu shot. *See* Compl. ¶ 121.[8]

As noted above, the failures to accommodate cannot by themselves support a claim for retaliation. *See Floyd*, 968 F. Supp. 2d at 334. The rest of Plaintiff's claims are the types of "ultimately unconsummated actions that are not materially adverse for purposes of retaliation claims." *Jones*, 168 F. Supp. 3d at 183 (quoting *McNair*, 903 F. Supp. 2d at 75–76). Plaintiff alleges that Dr. Van Echo issued the "Written Counseling" accusing Plaintiff of attendance violations two days after a separate Army unit published a Hazard Report, which was issued as a result of Ms. Harris's complaints. *See* Compl. ¶¶ 38–41. However, like in *Baloch*, this "Written Counseling" was job-related and is not alleged to have resulted in any punishment or restriction on leave. Moreover, Ms. Harris does not allege that she was actually punished or forced to forgo leave as a result of the leave restrictions or AWOL charge. *See id.* ¶¶ 43, 49. As for the flu shot, Ms. Harris merely alleges that the Army issued a "Counseling Statement," but never suggests that she was punished for her inability to take the shot. *See id.* ¶ 50.

Because these alleged instances of retaliation are the types of "ultimately unconsummated actions" that the D.C. Circuit has found to be sufficiently adverse, Plaintiff's retaliation claims against Defendant Fanning in Count II of the Complaint must be dismissed.

### 3.  Adverse Actions with respect to Failure to Accommodate

Defendants also allege that Plaintiff's failure-to-accommodate claims fail because they do not identify any adverse employment actions by Defendant Fanning. *See* Defs.' Mem. in Supp.

---

[8] Because the unexhausted—and therefore dismissed—retaliation claims occurred after the surviving claims, they are irrelevant to evaluating context.

Mot. to Dismiss at 7, 11.  However, Plaintiff is correct that in this circuit, plaintiffs need not

show adverse employment actions to state claims of failure to accommodate under the

Rehabilitation Act.  *See Woodruff v. Peters*, 482 F.3d 521, 527 (D.C. Cir. 2007) (setting out the

elements of a failure-to-accommodate claim, none of which include showing an adverse action);

*see also Faison v. Vance-Cooks*, 896 F. Supp. 2d 37, 49 (D.D.C. 2012) (same); *Bonnette v.

Shinseki*, 907 F. Supp. 2d 54, 77 (D.D.C. 2012) (analyzing adverse employment actions with

respect to discrimination and retaliation claims but not failure to accommodate claims, and

enumerating the elements of failure-to-accommodate without including adverse employment

actions).  In fact, Plaintiff is only required to show that "(1) she has a disability within the

meaning of the statute; (2) the defendant had notice of her disability; (3) she could perform the

essential functions of the employment position with or without reasonable accommodation; and

(4) the defendant refused to make the accommodation."  *Bonnette*, 907 F. Supp. 2d at 77.

     Defendants cite to several out-of-jurisdiction cases for the proposition that the Court

should impose an adverse-action requirement for failure-to-accommodate claims under the

Rehabilitation Act.  However, none of those cases actually squarely dealt with the issue here.

For example, in *Foster v. Arthur Andersen, LLP*, the Seventh Circuit analyzed the Americans

with Disabilities Act, reasoning that "a plaintiff who has suffered an adverse employment action

must show that," among other elements, "the disability caused the adverse employment action."

*See* 168 F.3d 1029, 1032–33 (7th Cir. 1999).  That court analyzed the element as one of

*causation*—not adverse action—and even went on to say that case law concerning "[t]he

Rehabilitation Act is unhelpful" in determining what a plaintiff must prove with respect to that

causation.  *See id.* 1032–33 & n.7.  The court never explained what an adverse action was and, if

anything, suggested that the failure to accommodate was itself the adverse action.  *See id.* at

1032–33.  This interpretation of *Foster* is in accord with subsequent decisions from courts in the

Seventh Circuit who have noted that "[t]he argument that *Foster* requires all failure to

accommodate claims to show an adverse employment action was . . . rejected" in later cases. *See*

*Nawrot v. CPC Int'l*, 259 F. Supp. 2d 716, 722 (N.D. Ill. 2003); *see also Nichols v. Unison*

*Indus., Inc.*, No. 99-cv-50194, 2001 WL 849528, at *6 (N.D. Ill. July 24, 2001).

Likewise, in *Cusack v. News America Marketing In-Store, Inc.*, the Second Circuit

affirmed a trial court's summary-judgment determination because the plaintiff "failed to

establish the requisite causal connection between [the defendant]'s alleged failure to

accommodate . . . and an adverse employment action."  371 F. App'x 157, 158 (2d Cir. 2010).

Although the Eighth Circuit did indeed state that the plaintiff was required to show an adverse

employment action in *Canny v. Dr. Pepper/Seven-Up Bottling Grp., Inc.*, that court did not

define "adverse employment action," instead stating that the very failure to accommodate by the

defendant—not finding another job for the plaintiff—constituted an adverse employment action.

*See* 439 F.3d 894, 900 (8th Cir. 2006).  The final circuit case that Defendant cites to is *Gaul v.*

*Lucent Technologies, Inc.*, 134 F.3d 576 (3d Cir. 1998).  That case references adverse

employment decisions with respect to discrimination claims, not specifically failure-to-

accommodate claims.  *See id.* at 580.

Defendants do cite to one District of Columbia District case, but the case involved failure

to accommodate for a plaintiff's religious practices, which entails a completely different set of

elements.  *See Francis v. Perez*, 970 F. Supp. 2d 48, 59–60 (D.D.C. 2013), *aff'd*, 2014 WL

3013727 (D.C. Cir. May 16, 2014).  As noted above, suffering an adverse employment action is

not an element of a failure-to-accommodate claim.  In comparison, under *Francis*, "[t]o establish

a prima facie case of discrimination based on a failure to provide a reasonable accommodation,

plaintiff must show that she (1) 'held a bona fide religious belief conflicting with an employment requirement;' (2) informed her employer of her belief; and (3) faced an adverse employment action due to her 'failure to comply with the conflicting employment requirement.'" *Id.* at 60 (quoting *EEOC v. Rent-A-Ctr., Inc.*, 917 F. Supp. 2d 112, 116 (D.D.C. 2013)).

Furthermore, it is worth noting that the *Francis* court's apparent recognition of an "adverse employment action" element may have been mistaken; in *EEOC v. Rent-A-Center*—the case that the *Francis* court cited for its construction of the religious failure-to-accommodate elements—another court in this district did not actually emphasize the need for showing an adverse action. *See* 917 F. Supp. 2d at 116. That court phrased the third element as requiring a showing that the plaintiff—who alleged that he was unlawfully terminated, *see id.* at 114—"was terminated 'for failure to comply with the conflicting employment requirement.'" *See id.* at 116 (quoting *Isse v. Am. Univ.*, 540 F. Supp. 2d 9, 29 (D.D.C. 2008) (citing *Taub v. F.D.I.C.*, No. 96-5139, 1997 WL 195521, at *1 (D.C. Cir. Mar. 31, 1997))). Perhaps with unintended consequences, the *Rent-A-Center* court seemed to be emphasizing the need to show a failure to comply rather than a termination, which was never in dispute in that case. *See id.* The cases that the *Rent-A-Center* court cited also do not provide a definitive answer; the cited D.C. Circuit case also refers to being "discharged" in passing, and the quoted district case—derivatively citing other circuits—refers to a requirement that the plaintiff show she was "disciplined for failure to comply with the conflicting employment requirement." *See Taub* 1997 WL 195521 at *1; *Isse*, 540 F. Supp. 2d at 29 (citing *Lemmons v. Georgetown Univ. Hosp.*, 431 F. Supp. 2d 76, 95 (D.D.C. 2006) (citing other circuits)). There is no indication that the "discipline" required in this context need result in the same concrete effects as is required in an "adverse employment action." Without wading too deeply into the issue, it suffices to say that because the standards

applied in a religious accommodation context are different than in a disability accommodation context, *Francis v. Perez* does not apply here.

In sum, these cases demonstrate that if a showing of an adverse employment action is required to state a claim, the failure-to-accommodate itself suffices in satisfying the requirement. Thus, even if the Court were to adopt the lines of reasoning in the cases that Defendants cite, the outcome here would not change.  But even more directly, because Plaintiff was not required to show that she suffered an adverse action apart from the failure to accommodate itself with respect to her failure-to-accommodate claim, the Court denies this portion of Defendants' Motion to Dismiss.

## IV.  CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (ECF No. 22) is **GRANTED IN PART** and **DENIED IN PART**.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  December 12, 2016                                    RUDOLPH CONTRERAS
                                                            United States District Judge